NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ELIZABETH WEBSTER,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7007

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 08-2940, Judge Robert N. Davis.

---

Decided: June 15, 2011

---

PETER J. SEBEKOS, Law Office of Peter J. Sebekos, of Niagara Falls, New York, argued for claimant-appellant.

L. MISHA PREHEIM, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assis-

tant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel and JONATHAN E. TAYLOR, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before RADER, *Chief Judge*, LOURIE, and BRYSON, *Circuit Judges*.

PER CURIAM.

Elizabeth Webster, the widow of a veteran, seeks compensation based on her husband's death, which she contends was service-connected. In this appeal, she argues that the Court of Appeals for Veterans Claims ("the Veterans Court") improperly rejected her contention that the Board of Veterans' Appeals should have ordered a medical opinion to be prepared in connection with her claim. We affirm.

Mrs. Webster's husband, Gary L. Webster, served in Vietnam during the 1960s as an active duty member of the United States Army. He died of pancreatic cancer in 1998. Mrs. Webster subsequently sought Dependency and Indemnity Compensation benefits for his death based on her assertion that his death was service-connected. Her theory of service connection was that Mr. Webster's exposure, while in Vietnam, to herbicides including Agent Orange ultimately caused the pancreatic cancer that resulted in his death.

After proceedings before a regional office of the Department of Veterans Affairs ("DVA") and the Board of Veterans' Appeals, followed by a remand from the Veterans Court for readjudication, the Board denied Mrs.

Webster's request for compensation. As part of its decision, the Board ruled, based on the evidence before it, that the DVA was not required to obtain a medical opinion with respect to the service-connection issue. The Board also held that the DVA had not violated its duty to assist the claimant because, based on the development of the case already undertaken, there was "no reasonable possibility that further assistance will aid in substantiating her claim."

The Board noted that Mr. Webster's disease did not manifest itself until more than 20 years after his separation from service and concluded that "the record does not contain any objective medical evidence that indicates that [his disease was] linked to his period of active military service, including herbicide and/or pesticide exposure during service in the Republic of Vietnam." The Board held that medical treatise evidence submitted by Mrs. Webster was general in nature and insufficient to support her claim of causation.

Mrs. Webster appealed that decision to the Veterans Court. She argued that the DVA had violated its duty to assist her when it failed to order a medical opinion that might support her claim. The court noted that the DVA is not required to order a medical opinion if "no reasonable possibility exists that the medical opinion would aid in substantiating her claim." Because the court concluded that a medical opinion would not aid Mrs. Webster in substantiating her claim, the court rejected her argument that an opinion should have been ordered.

On appeal to this court, Mrs. Webster does not disagree with the "no reasonable possibility" test articulated by the Veterans Court. Rather, she argues that the court erroneously relied on outdated precedents from before the

enactment of the Veterans Claims Assistance Act of 2000 ("VCAA"), which expanded the scope of the DVA's duty to assist claimants. Under the proper standard, she contends, the treatise evidence that she submitted should have been regarded as sufficient to trigger the DVA's duty to order a medical opinion regarding the question whether Mr. Webster's disease was caused by his exposure to Agent Orange.

Mrs. Webster objects to the Veterans Court's citation of cases dealing with the "well-grounded claim" rule, which at one time imposed a heavy evidentiary burden on claimants before the DVA's duty to assist the claimants would be triggered. *See Wallin v. West*, 11 Vet. App. 509 (1998); *Beausoleil v. Brown*, 8 Vet. App. 459 (1996). Congress abolished that rule in the VCAA and made clear that the DVA had a duty to assist claimants unless no reasonable possibility exists that such assistance would aid in substantiating their claims. 38 U.S.C. § 5103A(a)(2); *Wood v. Peake*, 520 F.3d 1345, 1348 (Fed. Cir. 2008); *see also Waters v. Shinseki*, 601 F.3d 1274, 1278-79 (Fed. Cir. 2010).

Mrs. Webster's objection to the court's reference to the well-grounded claim rule is well taken. That rule has been legislatively overturned, and references to the standards that were used in applying that rule risk creating confusion regarding the standard that applies to the DVA's responsibilities under the duty to assist imposed by the VCAA. In this case, however, the citation of the "well-grounded claim" cases in the Veterans Court's opinion is harmless, as it does not indicate that the court actually applied an incorrect standard. The court articulated the correct standard when it stated that a medical opinion is not required if "no reasonable possibility exists" that the opinion would aid in substantiating the claim, and the

language that the court cited from the "well-grounded claim" cases is not inconsistent with that test. Thus, the court stated that the treatise evidence was "general in nature" and that such evidence must not be "speculative" and "inconclusive."

Mrs. Webster particularly objects to the court's statement that the treatise evidence "lacks the 'degree of certainty' required by our prior caselaw." While the court's allusion to the "prior caselaw" appears to refer to the "well-grounded claim" cases, which do not set forth the correct standard for assessing the DVA's duties under the VCAA, the phrase quoted by the court is itself not incorrect as applied to the particular issue in this case. The court's reference to the "degree of certainty" is taken from a sentence in an earlier case providing that medical treatise evidence is sufficient to trigger the DVA's duty to assist if it "discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts." *Wallin*, 11 Vet. App. at 514, quoting *Sacks v. West*, 11 Vet. App. 314, 317 (1998). We do not regard that statement, at least as applied in this case, to be inconsistent with the "no reasonable possibility" standard earlier stated by the court. That is particularly true in light of the court's observation that the Board found the treatise evidence to be "speculative, general, and inconclusive," and the court's ultimate ruling that a medical opinion could not assist Mrs. Webster in substantiating her claim.

On this record, while we do not endorse the reference to cases invoking the well-grounded claim rule in the context of a case involving the post-VCAA duty to assist, we conclude that the court's reference to several of its previous well-grounded claim cases did not have the effect of altering the court's application of the proper standard,

which it articulated at the outset of its discussion of the treatise issue. Because, in this context, our jurisdiction is limited to review of the legal principles and rules applied by the Veterans Court, we do not address the question whether the court correctly held that, under the proper legal standard, the particular evidence submitted in this case should have been deemed sufficient to require the DVA to order a medical opinion.

No costs.

**AFFIRMED**