Citation Nr: 1452671 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 12-06 877 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUES

1. Entitlement to service connection for a heart or chest disability. 

2. Entitlement to service connection for lumbar spine arthritis, to include as secondary to a service-connected bilateral knee disability, status post-left total knee replacement.


REPRESENTATION

Appellant represented by: Mississippi Veterans Affairs Commission


ATTORNEY FOR THE BOARD

W.T. Snyder, Counsel

INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).

The Veteran served on active duty from February 1957 to February 1960 in the U.S. Marine Corps (USMC) and from July 1961 to June 1964, and from March 1983 to March 1997 in the U.S. Army (USA). From March 1973 to March 1983 he was a member of the U.S. Army Reserve (USAR) during which he served tours of active and inactive duty for training. 

These issues come before the Board of Veterans' Appeals (Board) on appeal from a July 2010 rating action of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi. In that decision, the RO continued and confirmed the prior denial of service connection for a "chest condition and bradycardia" and denied service connection for arthritis of the lower spine. The issues have been re-characterized on the title page for clarity.

The issue of entitlement to service connection for a heart or chest disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

In an April 2014 decision, the Board reopened the heart claim and remanded it and the low back claim to the Appeals Management Center (AMC) in Washington, DC for additional development.

In addition to his paper claims file, the Veteran has Virtual claims files in Virtual VA and VBMS, both of which are highly secured paperless repositories, associated with his appeal. The Board considered the evidence in both files while reviewing the appeal.

FINDINGS OF FACT

1. The AMC completed the additional development directed in the April 2014 Board remand.

2. The preponderance of the evidence shows the Veteran's lumbar spine arthritis was not incurred in service and is not due to or aggravated by the service-connected knee disability.


CONCLUSION OF LAW

The requirements for entitlement to service connection for lumbar spine arthritis due to service-connected knee disability have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107(b) (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of the VCAA, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126, have been met. There is no issue as to providing an appropriate application form or completeness of the application. A June 2009 RO letter provided the Veteran time- and content-compliant VCAA notice. See 38 C.F.R. § 3.159(b)(1); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Neither the Veteran nor his representative asserts any deficiency in notice or prejudice from any asserted error. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

VA has also fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. The Board remanded so additional service treatment records and claimed VA treatment records could be obtained. The service treatment records extant related to the Veteran's for the period the Veteran was a reservist and additional service personnel records were added to the file. The VAMC, Milwaukee, WI, informed the AMC that a search of its files revealed no records related to the Veteran for the period 1982. The Veteran was apprised of this fact. See 38 C.F.R. § 3.159(e). In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. Hence, the Board may address the merits of the appeal without prejudice to the Veteran.

Legal Requirements

A disability which is proximately due to or the result of a service-connected injury or disease shall be service connected. 38 C.F.R. § 3.310. Further, a disability which is aggravated by a service-connected disorder may be service connected to the degree that the aggravation is shown. Allen v. Brown, 7 Vet. App. 439 (1995).

In order to establish entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical evidence establishing a nexus between the service-connected disability and the current disability. See generally Wallin v. West, 11 Vet. App. 509, 512 (1998), overruled on other grounds, Webster v. Shinseki, 428 Fed. Appx. 976, 977-78 (Fed. Cir. 2011).

Analysis

The evidence of record shows Wallin elements 1 and 2 are proven: the Veteran has a current diagnosis of lumbar spine degenerative arthritis shown on X-ray, and service connection is in effect for bilateral knee disability. Hence, the only issue to be resolved is whether there is a connection between the two, either by causality or aggravation.

Private records of the Veteran's post-left total knee replacement physical therapy and the VA examination report reflect his reported history of having developed low back pain during his therapy. The Veteran asserted in a written submission that his low back pain started as a result of his use of a constant passive motion machine after the left total knee replacement.

A September 2009 private letter of Dr. P notes that the Veteran has some low back complaints that could be worsened by his bilateral knee complaints.

As noted earlier, the May 2010 VA joints examination report notes the Veteran reported his low back symptoms started as a result of his use of a CPM machine. He assessed his pain as 9/10 on a scale of 1 to 10. He reported further that the pain radiated down the back of the right leg, and he denied any bladder or bowel involvement.

Physical examination revealed some lumbar spine limitation of motion and pain on motion. Neurological examination was normal. X-rays showed some arthritis without disc space narrowing. The examiner diagnosed degenerative spondylosis without radiculopathy. The examiner opined that it was not at least as likely as not that the Veteran's lumbar spine arthritis was due to the post-surgery left knee rehabilitation. The examiner noted, however, that it was possible that the rehabilitation of the left knee could have exacerbated an
underlying degenerative spine condition, the degree of which could not be ascertained except by mere speculation.

The Board remanded in part so that the examiner could further clarify that part of the opinion that addressed aggravation. In a July 2014 addendum, the examiner noted review of the claims file and related medical records. The examiner again noted that a baseline for any aggravation of the low back arthritis by the knee disability could not be established due to insufficient medical evidence. The examiner opined further, however, that aside from any issue of a baseline, it was not at least as likely as not that the Veteran's service-connected knee disability aggravated the low back arthritis beyond its natural progression. The examiner's rationale was that back pain at 75 years of age is far more likely to be caused by normal wear and tear and age-related changes rather than aggravation by a knee condition. Knee conditions are not known to be causative of back pathology and there is no evidence in this case of aggravation of the back by the knee condition.
The Board that must assess the credibility and probative value of evidence, and, provided that it offers an adequate statement of reasons or bases, the Board may favor one medical opinion over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). While the Board is not free to ignore the opinion of a treating physician, it is not required to automatically accord it greater weight. See Guerrieri v. Brown, 4 Vet. App. 467, 471-73 (1993); Sanden v. Derwinski, 2 Vet. App. 97, 101 (1992).

The VA examiner in 2014 provided a reasoned rationale for the above stated medical opinion. Hence, the Board finds it highly probative. See Nieves v. Rodriguez, 22 Vet. App. 295 (2008). The Board acknowledges that the same examiner stated in 2010 that it was "possible" that therapy for the knee may have aggravated the back, which is somewhat in contradiction to his response in 2014. When faced with conflicting medical findings, the Board must weigh the probative value of each. In this case, the more recent 2014 was accompanied by a much more thorough explanation than the earlier comment made in 2010. Accordingly, the latter opinion is deemed more probative. Similarly, the Board also recognized Dr. P's opinion set forth earlier, but finds it tentative at best. He opined that the Veteran's low back complaints "could be" worsened by his knee disability. The Board finds "could be" falls short of probable. See generally Obert v. Brown, 5 Vet. App. 30, 33 (1993) (medical opinions expressed in terms of "may" also implies "may" or "may not"' and are speculative); see also Bostain v. West, 11 Vet. App. 124, 127-28 (1998). Further, Dr. P did not provide a rationale for his opinion. Thus, the Board accords far more weight to the opinion of the VA examiner in 2014.

The Board acknowledges the Veteran's several written submissions wherein he asserts that the medical examiner's did not consider the full history of his claimed disability. As noted earlier, the examination reports reflect that the examiner conducted a review of the claims file and took the Veteran's reported history. Hence, the assertion is without a factual basis.

In light of all of the above, the Board is constrained to find the preponderance of the evidence is against the claim, as Wallin element 3 is shown to be absent. 38 C.F.R. § 3.310.

In reaching this decision the Board considered the doctrine of reasonable doubt. As the preponderance of the evidence is against the Veteran's claim, however, the doctrine is not for application. Schoolman v. West, 12 Vet. App. 307, 311 (1999).


ORDER

Entitlement to service connection for lumbar spine arthritis, to include as secondary to a service-connected bilateral knee disability, status post-left total knee replacement, is denied.


REMAND

Regrettably, the heart claim must again be remanded to the examiner who conducted the prior examinations. The examiner reviewed the claims file, to include records added since the April 2010 examination, but did not indicate if the additional evidence changed the nexus opinion rendered at that examination as directed in the Board remand. Hence, another review is required. See Stegall v. West, 11 Vet. App. 268 (1998). Moreover, the examiner expressed difficulty in evaluating a heart disorder four years after the examination occurred. However, it is not necessary to have another examination; the examiner is simply being asked to consider the evidence of heart disorder already of record and opine the likelihood that such was incurred in or otherwise related to active service.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Send the claims file to the examiner who conducted the April 2010 heart examination. Ask the examiner to specifically advise if the records and other evidence added to the claims file since the April 2010 examination in any way changes the opinion rendered at that examination.

The examiner is asked to provide a full explanation and rationale for the response.

2. After the development requested has been completed, the AOJ should review the examination reports to ensure that they are in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures at once.

3. After completion of all of the above, the AOJ shall re-adjudicate the claims on appeal de novo. If the decision remains in any way adverse to the Veteran, he and his representative should be provided with a Supplemental Statement of the Case (SSOC).

The case should thereafter be returned to the Board, if in order. The Board intimates no opinion as to the ultimate outcome of this case. The Veteran need take no action unless otherwise notified. VA will notify him if further action is required on his part. He has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

 (CONTINUED ON NEXT PAGE)




This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2014).



______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs